IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| THERESE HARMON, Trustee, THE HARMON 1999 DESCENDANTS' TRUST, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | Civil Action No. 1:20-cv-1442 (RDA/TCB) |
| GERMAINE F. HARMON, | ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| CGH INVESTMENT MANAGEMENT, LLC, as successor in interest to TRADITIONS LP, and CIH TECHNOLOGY HOLDINGS, LLC, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on cross-motions for summary judgment submitted by parties to these proceedings. The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). These motions are now fully briefed and ripe for disposition.

The Court has considered Defendant Germaine Harmon's Motion for Summary Judgment (Dkt. 64); the Opposition submitted by Plaintiff Therese Harmon, Trustee of the Harmon 1999 Descendants' Trust ("the Trust" or "H99DT") (Dkt. 74); and Defendant Germaine Harmon's Reply (Dkt. 77). In addition, the Court has considered Third-Party Defendant CIH Technology Holdings, LLC's ("CIH Technology" or "CIH") Motion for Summary Judgment (Dkt. 176); H99DT's Motion for Summary Judgment (Dkt. 179); Defendant Germaine Harmon's Opposition to both of those summary judgment motions (Dkt. 204); CIH Technology's Reply (Dkt. 205); and

H99DT's Reply (Dkt. 206).

For the reasons that follow, the Court grants Germaine Harmon's motion for summary judgment, grants CIH Technology's motion for summary judgment, and grants H99DT's motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

The following individuals and entities are parties to this litigation.  Defendant and Third-Party Plaintiff, Germaine Harmon, is a Florida resident.  Dkt. 5 ¶ 40.  She is a member of CGH Investment Management, LLC ("CGH Investment" or "CGH"), a Third-Party Defendant.  *Id.* While Germaine Harmon is a named Defendant in this action, she has also brought counterclaims against various parties.  Plaintiff Therese Harmon, the H99DT Trustee, is a Virginia citizen.  *Id.* ¶ 41.  She has been countersued in her representative capacity as current trustee of H99DT.  *Id.*  ¶ 43.  CGH Investment Management, LLC is a Florida limited liability company and is also the successor in interest to Traditions, LP, a Delaware limited partnership.  *Id.*  ¶ 42.  And finally, Third-Party Defendant CIH Technology Holdings, LLC, is a Delaware entity owned by H99DT and another non-party.[1]  *Id.*  ¶ 44.

The undisputed material facts are that Germaine Harmon's late husband, Charles M. Harmon, Jr., died in January of 1997.  Dkt. 65 ¶ 1.  He left substantial assets to his family, including interests in business, real estate, securities and cash.  *Id.* ¶ 2.  In addition to his wife, Charles left behind four children—Timothy ("Tim") Harmon, Jennifer Gaffney, Paul Harmon, and Charles B. Harmon.  Dkt. 177-1 ¶ 1.  Tim Harmon is married to Therese Harmon.  *Id.* ¶ 2.  Around February

---

[1] CIH Technology is half owned by the H99DT Trustee and half owned by an unrelated non-party, St. Paul IDC.  *See* Dkt. 177-1 ¶ 4.

of 1999, a limited partnership known as Traditions ("Traditions") was formed.  Dkt. 65 ¶ 3.  The limited partnership was governed by a partnership agreement, which is controlled by Delaware law.  *Id.*  The partnership sought to manage the assets that the surviving members of the family inherited from the late Charles M. Harmon, Jr.

A trust known as The Harmon 1999 Family Descendants' Trust was also created on June 7, 1999, by Tim and Therese Harmon, as settlors, with Tim Harmon acting as the original trustee. Dkt. 65 ¶ 5.  H99DT alleges that the Trust and its beneficiaries "have been cut off from access to substantial funds belonging to the Trust" that, in the Trust's view, should be allocated to the Trust's capital account from the "assets held by Traditions."  Dkt. 1. ¶ 20.

For many years, Tim Harmon exercised operational control of Traditions.  Dkt. 66 ¶ 4.  In 2009, the Traditions limited partnership began to transfer funds to an entity called Fame Trading Limited ("Fame"), which is now known as CIH Technology.  Dkt. 177-1 ¶ 14.  These transfers continued until about 2011, and Traditions transferred an estimated fifteen million dollars to Fame over this time period.  *Id.*  Traditions' general ledger, although its contents remain the subject of dispute between the parties, reflects the transfers to Fame and shows approximately 200 separate entries from May 19, 2009 to August 19, 2019.  *Id.* ¶ 15.  These transfers were sporadic and did not follow any set schedule.  *Id.* ¶ 16.  Germaine did not transfer any of her own money to Fame (now CIH Technology).  *Id.* ¶ 22.

Around August of 2019, Germaine Harmon removed Tim Harmon "as manager of the family companies."  Dkt. 66-1 ¶ 1.  From that point forward, Traditions, and its alleged successor in interest, CGH Investment Management, LLC, was controlled by Germaine Harmon or her designees.  Dkt. 66 ¶ 4.  On August 20, 2019, Germaine Harmon, on her own behalf and on behalf of Traditions, sued Tim Harmon for various causes of action related to his management of the

family partnership.  H99DT was not a party to the Florida lawsuit and, the lawsuit was ultimately without prejudice.  *Id.* ¶ 8.

Tim Harmon's wife Therese Harmon took issue with Germaine Harmon's actions and inactions as trustee, and Therese Harmon brought this civil action on behalf of H99DT against Germaine Harmon on November 3, 2020.  *Id.* ¶ 9.  H99DT alleges that the Trust and its beneficiaries "have been cut off from access to substantial funds belonging to the Trust" that, according to H99DT, should be allocated to the Trust's capital account from the "assets held by Traditions."  *Id.* ¶ 12.

## B. Procedural Background

Plaintiff H99DT Trustee's November 23, 2020 Complaint states a single cause of action for breach of fiduciary duty as trustee against Defendant Germaine Harmon. Dkt. 1.  On December 28, 2020, Defendant Germaine Harmon filed an answer and affirmative defenses.  She also brought a counterclaim and Third-Party Complaint seeking declaratory judgment against CGH Investment Management, LLC, as successor in interest to Traditions, and Therese Harmon in her representative capacity as the alleged trustee for H99DT.  Dkt. 5.  Defendant Germaine Harmon also brought a counterclaim for unjust enrichment against Therese Harmon in her representative capacity as trustee for H99DT, and a Third-Party Complaint for unjust enrichment against CIH Technology Holdings, LLC.  *Id.*

The Court issued a scheduling order, and discovery began.  CGH Investment then brought a declaratory judgment claim against H99DT and Germaine Harmon, seeking a declaratory judgment that H99DT has never been a partner in Traditions, and an unjust enrichment crossclaim against CIH Technology and H99DT.  Dkt. 34.  H99DT and CIH Technology moved to dismiss both Germaine Harmon's unjust enrichment counterclaim and CGH Investment's unjust

4

enrichment crossclaim. The Court denied those motions on September 29, 2021. Dkt. 166.

On August 6, 2021, Magistrate Judge Buchanan issued an order imposing sanctions on H99DT and CIH Technology for repeated discovery misconduct and production deficiencies. Dkt. 129. This Court upheld the Sanctions Order on November 19, 2021. Dkt. 211. Then, on November 30, 2021, Defendant Germaine Harmon moved for entry of proposed findings of fact and conclusions of law. Dkt. 227. That same day, the Court entered an order setting a briefing schedule and removing the jury trial from the Court's calendar. Dkt. 228. H99DT and CIH Technology responded on December 14, 2021, and, after receiving an emergency extension to reply, Defendant Germaine Harmon replied on December 30, 2021. Dkt. Nos. 229; 230; 235.

Defendant Germaine Harmon's motion for proposed findings of fact and conclusions of law was preceded by the parties' cross motions for summary judgment. Defendant Germaine Harmon seeks summary judgment on H99DT's breach of fiduciary duty claim, CIH Technology requests summary judgment on Germaine Harmon's and CGH Investment's unjust enrichment claims, and H99DT also asks the Court to grant partial summary judgment on Germaine Harmon's and CGH Investment's unjust enrichment claims. The Court resolves the parties' summary judgment motions today and reserves judgment on Germaine Harmon's motion for proposed findings of fact and conclusions of law.[2]

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a

---

[2] Defendants Germaine Harmon's and CGH Investment's Joint Motion for Attorneys' Fees (Dkt. 173) remains under advisement.

reasonable jury could return a verdict for the non-moving party.'" *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615-16 (E.D. Va. 2014) (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).  The moving party bears the "initial burden" of showing that there is no genuine issue of material fact.  *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists."  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence in the light most favorable to the non-moving party.  *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).  Importantly, "at the summary judgment stage[,] the [court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. ANALYSIS

### A. Defendant Germaine Harmon's Motion for Summary Judgment

Defendant Germaine Harmon asks the Court to enter summary judgment in her favor on the breach of fiduciary duty claim H99DT has brought against her.  Germaine Harmon argues that summary judgment is appropriate because H99DT, as an individual shareholder, has improperly attempted to plead around basic partnership law by bringing a claim against her rather than bringing one derivatively on behalf of the partnership.  Furthermore, she asserts that H99DT has failed to show a causal link between Germaine Harmon's alleged breaches of fiduciary duty and the alleged harm H99DT has suffered.  Finally, Germaine Harmon contends that the breach of fiduciary duty claim fails because H99DT is unable to show damages.  According to Germaine

Harmon, regardless of whether H99DT was a limited partner, the Trust cannot prove damages because H99DT has no claim to the property and the funds it hopes to use. In response, H99DT argues that its legal theory is viable in all respects and that Germaine Harmon wrongfully downplays the factual predicate of its fiduciary breach claim.[3] The Court takes these arguments in turn.

### 1. Whether H99DT's Claim is Viable as a Matter of Law

The Court first addresses the threshold issue of whether H99DT may bring a breach of fiduciary duty claim against Germaine Harmon personally rather than derivatively on behalf of the partnership. In a footnote of its Complaint, and again in its Opposition, H99DT states that it "makes no claims against Germaine based upon her role in Traditions. Rather, the claims in this Complaint relate to and arise solely from Germaine's actions and inactions while she was Trustee of H99DT to the detriment of the beneficiaries of the Trust." Dkt. 1 at 3 n.1. Instead of bringing a derivative claim on behalf of the limited partnership, H99DT has instead elected to sue Germaine Harmon directly as a proxy for the limited partnership. H99DT disclaims any understanding of its Complaint as bringing allegations founded on Germaine Harmon's exercise of a controlling interest in the managing general partner of Traditions.

H99DT acknowledges that its reason for proceeding in this fashion was "to prevent Germaine Harmon from asserting that she was entitled to advancement and indemnification of her legal fees for this case from Traditions funds." Dkt. 74 at 18 n.8. To be sure, "the plaintiff is the 'master of the complaint.'" *Wyatt v. Sussex Surry, LLC*, 482 F. Supp. 2d 740, 744 (E.D. Va. 2007)

---

[3] H99DT's Opposition also states that Germaine Harmon's summary judgment motion, which she filed before discovery was complete, is premature. *See* Dkt. 74 at 23-7. H99DT argued that, at that time, the Trust has not yet had an adequate opportunity to take discovery. Whatever its force when H99DT opposed the Motion, this ground for rejecting the Motion is unavailing given the maturity of the case today.

(quoting *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004)).  Accepting that axiom, this Court takes the parties' pleadings as it finds them.  At this stage of litigation, a plaintiff "must offer a viable legal theory that can withstand a motion for summary judgment before he can have a jury assess the facts of this case." *Nguyen v. CNA Corp.*, 44 F.3d 234, 243 (4th Cir. 1995).

"It is state law that determines 'whether a shareholder may maintain a direct, nonderivative action.'" *Labovitz v. Washington Times Corp.*, 900 F. Supp. 500, 503 (D.D.C. 1995), *aff'd*, 172 F.3d 897 (D.C. Cir. 1999).  The Court looks first to Virginia law, as Germaine Harmon advises, and then to Texas law, as H99DT suggests.

H99DT's novel pleading strategy finds little support in Virginia partnership law.  *See, e.g.*, *Trivedi v. Pathak*, No. 3:08-cv-00003, 2008 WL 1758913, at *2 (E.D. Va. Apr. 16, 2008) ("When a limited partner alleges wrongs to the limited partnership that indirectly damaged a limited partner by rendering his contribution or interest in the limited partnership valueless, the limited partner is required to bring his claim derivatively on behalf of the partnership.") (quoting *Little v. Cooke*, 274 Va. 697, 712 (2007)); *Simmons v. Miller*, 261 Va. 561, 573 (2001) ("The overwhelming majority rule is that an action for injuries to a corporation cannot be maintained by a shareholder on an individual basis and must be brought derivatively.") (collecting cases).  H99DT has chosen not to bring a derivative claim, but its approach is foreclosed by Virginia law.  Based on the facts presented, the Court finds that H99DT cannot maintain a breach of fiduciary duty claim against Germaine Harmon.

The result is the same under Texas law.  To support its novel theory of complaint, H99DT introduces several Texas state trial and appellate court decisions for the proposition that its pleading novelty is appropriate in that state—at least in cases where a trustee's "dual" role may allow a suit for damages separate from ordinary partnership or shareholder disputes.  *See generally*

Dkt. 74.  But "the Fifth Circuit, applying Texas law, has made it clear that a cause of action for an officer's or director's breach of a fiduciary duty owed to the corporation belongs to the corporation, and not to individual shareholders."  *In re Chiron Equities, LLC*, 552 B.R. 674, 688-89 (Bankr. S.D. Tex. 2016).  "This same principle has been applied to require derivative action where an injury is in reality suffered by a limited partnership."  *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 221 (5th Cir. 1994).  Based upon the allegations in the Complaint, the Court concludes that H99DT's claims are predicated primarily on harms Germaine Harmon allegedly inflicted on the limited partnership generally.  These harms were collective injuries suffered by the partnership, and thus, H99DT cannot sue Germaine Harmon directly for them.  *See 7547 Corp.*, 38 F.3d at 221 ("[A] limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a shareholder of a corporation.") (quoting *Strain v. Seven Hills Assocs.*, 429 N.Y.S.2d 424, 432 (1980)).  Therefore, Texas law also precludes H99DT from bringing a breach of fiduciary duty claim against Germaine Harmon personally.

This cause of action also contravenes the very principles underlying derivative claims, which are designed to guard against litigation abuses.  *See DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 585 (E.D. Va. 2014) ("If [the Court provided] a direct cause of action to a shareholder for a director's fiduciary breach, this Court would have to ignore policies that drive derivative claims.").  To allow H99DT's claim to proceed would tread new ground in this jurisdiction, permitting a plaintiff to rely on trust law to pierce the corporate veil, directly sue a former trustee for breach of fiduciary duty, and hold her liable for damages for the Trust's alleged loss of its limited partnership capital account.  This Court declines to chart that path.

*2. Whether H99DT has Adequately Alleged Fiduciary Breach*

Even if the law allowed us to proceed along the road H99DT proposes, this case presents a poor vehicle for such invention.  The essence of H99DT's breach of fiduciary duty claim is that Germaine Harmon took certain actions—or "asserted positions," Dkt. 1 ¶ 20—"that promoted her personal interests and were contrary to the interests of the Trust."  *Id.*  These actions and asserted positions, in turn, allegedly deprived the Trust's beneficiaries millions of dollars in assets held by Traditions on behalf of the Trust, "including the proceeds of the sale of the COMSAT stock."  *Id.*  The result of those actions has been to reallocate some or all of those assets to Germaine Harmon herself to the financial detriment of the Trust's beneficiaries.

These serious allegations aside, it appears that the foundation of the controversy between H99DT and Germaine Harmon was a December 2018 phone call with the Harmon family.  On the phone call, Germaine Harmon disagreed with her son, Tim, over H99DT's claims that the Trust was a partner in Traditions.  Then, in a January 2019 meeting with the Harmon family, Germaine Harmon again vocalized her disagreements with Tim Harmon's positions.  And on August 20, 2019, Germaine Harmon and CGH Investments brought a lawsuit against Tim Harmon in Florida.  In that litigation, which was later dismissed without prejudice, Germaine Harmon again stated her position on H99DT's status in the partnership.  For its part, H99DT cites other instances of Germaine Harmon's alleged conduct in support of its breach of fiduciary duty claim: she evidently began efforts to sell the estate where the Trust beneficiaries live, an estate that was allegedly bought and improved with H99DT's capital account in Traditions.  And while certain Trust beneficiaries were home from school on Thanksgiving break in November of 2019, while Germaine Harmon was a trustee of H99DT, she caused a notice to be served on the Trust beneficiaries and their parents demanding that the Trust beneficiaries and their parents vacate their

home at Wind Fields Farm in Middleburg, Virginia.

Whether any of this behavior by Germaine Harmon was prudent as a matter of family politics is a matter that lies far beyond the purview of this Court.  However, interpreting the underlying trust agreement is a matter that falls squarely within the judicial bailiwick.  Upon review of the operating trust agreement, it appears a trustee may "collect, pay, compromise, settle, renew, or abandon any claims or demands of or against the trust estate without court authority on whatever terms the Trustee deems advisable."  Dkt. 1-1 at § 6.1(j).  In other words, Germaine Harmon as trustee had broad latitude to engage in certain transactions, so long as she deemed the terms advisable.  That her fiduciary duties in this family trust were less stringent than what might have been required under other statutory or common law rules does not alter the trust agreement's terms.  *See, e.g.*, *Jochec v. Clayburne*, 863 S.W.2d 516, 518 (Tex. App. 1993) ("[W]hen a trust agreement modifies the duties imposed on a trustee by statute or common law, the trustee's duties are thereafter governed by the terms of the trust instrument."); *Burton v. Dolph*, 89 Va. Cir. 101, 2014 WL 10355632, at *9 (2014) (stating that generally, under Virginia law, "the terms of the trust agreement itself will prevail over statutory provisions") (citing Va. Code Ann. § 64.2–703(A)). This Court gives effect to the trust agreement's ample grant of authority to the trustee.

In sum, H99DT's claim for breach of fiduciary duty against Germaine Harmon is legally unsound and factually deficient.  The fiduciary breach claim brought directly rather than derivatively is not cognizable under the majority view expressed by courts applying relevant state law.  And even if it were, the facts do not support H99DT's theory of fiduciary breach.  Having reached these conclusions, the Court declines to address causation and damages.

11

B. CIH Technology's Motion for Summary Judgment

CIH Technology seeks summary judgment on Germaine Harmon's unjust enrichment counterclaim and partial summary judgment on CGH Investment's unjust enrichment crossclaim. Defendants' Opposition raises three threshold objections to CIH Technology's and H99DT's summary judgment motions: (1) that they fail to address admissibility of evidence; (2) that they are not ripe; and (3) that they are untimely given the circumstances of the case. *See* Dkt. 204 at 10-15. The second and third objections are easily dispensed with, given the Court's November 30, 2021 Order removing the jury trial from the Court's docket, and the present posture of this litigation.

The admissibility objection Defendants raise under Federal Rule of Civil Procedure 56(c)(2) is more compelling, especially in light of the evidentiary sanctions the Court imposed due to repeated discovery violations. Even so, the Court finds that there is a sufficient basis to rely on the relevant documents attached to the summary judgment motions. Defendants included the general ledger in their own exhibit list, *see* Dkt. 103 at 10, suggesting they attach at least some evidentiary value to that document; furthermore, H99DT points to deposition testimony to establish a foundation for its admissibility. *See* Dkt. 206 at 8 n.7. H99DT has satisfied its burden to show that the general ledger is a business record maintained by Traditions, for example, even if the parties dispute whether its entries are complete or accurate. *See* Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). This determination is without prejudice to any party's ability to later challenge the completeness or accuracy of the records.[4]

---

[4] In litigating these issues, the parties must adhere to the parameters outlined in the Court's

To prevail on the merits of an unjust enrichment claim, a plaintiff must establish that it (1) conferred a benefit on the defendant; (2) that the defendant knew of the benefit and should reasonably have expected to pay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value.  *Schmidt v. Household Fin. Corp.*, 276 Va. 108, 116 (2008).

CIH Technology argues that summary judgment is appropriate on Germaine Harmon's unjust enrichment counterclaim because there is no evidence she enriched CIH Technology and lacks standing to pursue the claim.   And CIH Technology seeks summary dismissal of CGH Investment's unjust enrichment crossclaim to the extent that claim seeks to recover for injuries sustained before November of 2017.  The Court addresses each contention below.

*1. Germaine Harmon's Unjust Enrichment Counterclaim against CIH Technology*

The record on summary judgment demonstrates that Germaine Harmon never conferred a benefit on CIH Technology.  No reasonable factfinder could conclude otherwise.  In her deposition, Germaine Harmon testified, without contest, that she had never provided any money to CIH Technology:

> Q: Have you ever provided money directly to CIH Technology Holdings, LLC?
> A: To the – to the best of my knowledge, no.
> Q: Have you ever provided money indirectly to CIH Technologies, LLC?
> A: Not to the best of my knowledge.

Dkt. 177-1 at 108-109 (Dep. of Germaine Harmon, 108:24-109:4).  Neither is there any suggestion in the record that Germaine Harmon voluntarily or involuntarily conferred some sort of non-monetary benefit on CIH Technology.  This fact is fatal to Germaine Harmon's unjust enrichment counterclaim against CIH Technology because to prevail on that cause of action, she must demonstrate that she "conferred a benefit on the defendant."  *Rosetta Stone Ltd. v. Google Inc.*,

_____

August 6, 2021 Sanctions Order and this ruling.

732 F. Supp. 2d 628, 631 (E.D. Va. 2010) (quoting *Schmidt*, 276 Va. at 116).

In response, Germaine Harmon argues that the logic underpinning the Court's opinion denying CIH Technology's motion to dismiss her unjust enrichment claim should apply with equal force here. That argument is misplaced for two reasons.

First, while the Court denied CIH Technology's motion to dismiss, the Court did so on the basis of Germaine Harmon's purported inability to even assert an unjust enrichment claim at the pleading stage. A party's pleadings are viewed in a different light on summary judgment, when a court must look beyond mere allegations in a complaint and determine whether there is competent record evidence to permit a claim to proceed to trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). There is no such evidence here.

Second, to the extent the Court's denial of CIH Technology's motion to dismiss Germaine Harmon's unjust enrichment counterclaim is understood as a pronouncement on her standing to bring suit, the case law is clear that standing may be readdressed at any stage of litigation. Subject matter jurisdiction is always a live issue, and defects in Article III standing may be evaluated— and reevaluated—at any point over the course of litigation. *See, e.g.*, *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (observing that the "absence of [subject matter] jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence"); *N. Pointe Ins. Co. v. Tap Techs., Inc.*, No. 2:12-CV-140-FTM-29CM, 2014 WL 1573140, at *1 (M.D. Fla. Apr. 18, 2014) (ruling at motion-to-dismiss stage that "while subject matter jurisdiction remains a 'live' issue for the duration of the case, plaintiff has satisfied its burden at this stage of the proceedings."). A court that decides a party has standing to sue may later determine, either upon review of a more developed record or by looking to changed factual circumstances in the case, that the party lacks standing; likewise, a party that does not have standing may later gain it, as ripeness

doctrine makes clear.  That is why this Court expressly observed that its motion-to-dismiss ruling would "not preclude any party from properly asserting a lack of subject-matter jurisdiction at a later juncture in this litigation—based on facts adduced in discovery, for example—as '[o]bjections to subject-matter jurisdiction [] may be raised at any time.'"  *Harmon, Tr. of Harmon 1999 Descendants' Tr. v. Harmon*, No. 1:20-cv-1442, 2021 WL 4453602, at *6 n.4 (E.D. Va. Sept. 29, 2021) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).

Finally, although Germaine Harmon argues that she can prevail on her unjust enrichment claim against CIH Technology if H99DT prevails on its breach of fiduciary duty claim at trial, this argument cannot save her claim.  The Court today also grants summary judgment to Germaine Harmon on the fiduciary breach claim H99DT brought against her.  Therefore, there is no basis for sustaining her unjust enrichment claim against CIH on the theory that it hinges on the success of H99DT's fiduciary breach case at trial.

Consequently, the Court finds there is no genuine issue of material fact on Germaine Harmon's unjust enrichment crossclaim against CIH Technology because the undisputed facts show she never conferred a benefit on CIH Technology.

### 2. CGH Investment Management's Unjust Enrichment Crossclaim Against CIH Technology

Turning to CGH Investment's unjust enrichment crossclaim against CIH Technology, CIH seeks summary judgment on all transfers prior to November 23, 2017.  The statute of limitations on a claim for unjust enrichment is three years.  *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012).  The Court considered and rejected CIH Technology's bid to dismiss CGH Investment's unjust enrichment crossclaim as time-barred based on the pleadings alone, observing that disposing of a claim in such summary fashion is only appropriate in those "rare circumstances" where such relief is readily justified based on the face of the Complaint.  *Goodman v. Praxair,*

*Inc.*, 494 F.3d 458, 464-66 (4th Cir. 2007).  Now, at summary judgment, with the benefit of a record and full briefing on statute-of-limitations and tolling questions, this Court considers whether any portions of CGH Investment's unjust enrichment claim rely on transactions falling outside the three-year statute of limitations.

This case began when H99DT filed a Complaint on November 23, 2020.  Therefore, CGH Investment can make its case for any unjust enrichment alleged to have occurred on or after November 23, 2017, but any injuries predating the three-year statute of limitations are not legally cognizable.  Again, a party seeking unjust enrichment must show that they (1) conferred a benefit on the defendant; (2) that the defendant knew of the benefit and should reasonably have expected to pay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value.  *Schmidt*, 276 Va. at 116.

Here, in an action involving the propriety of certain financial transactions, that means the accrual date for statute of limitations purposes is the date when each transfer of funds from Traditions (now allegedly operating as CGH Investment) was made to Fame (now allegedly operating as CIH Technology).  The undisputed facts show that CGH *qua* Traditions made at least the following transactions in the three-year period leading up to November 23, 2020:

| Transaction Date | Transaction Type | Recipient | Amount |
|---|---|---|---|
| 06/06/2018 | Check | Fame Trading Company | $10,000.00 |
| 06/07/2018 | Check | Fame | $10,000.00 |
| 09/04/2018 | Check | Fame Trading Company | $10,000.00 |
| 09/05/2018 | Check | Fame Trading Company | $10,000.00 |
| 08/19/2019 | Check | Fame Trading Company | $5,000.00 |

Dkt. 204-5 at 4.  Germaine Harmon and CGH contend, however, that Traditions' general ledger was kept haphazardly and that it contains "inaccurate or fraudulent entries that conflict with other general ledgers kept by the same people and even conflict with other entries in the same General Ledger." Dkt. 204 at 17-18.  They also allege that the record reflects discussions about the methods

16

by which Traditions would keep conflicting books.  *Id.* at 18.

This Court recognizes that the number of transactions occurring during the statute of limitations period, and the quantities involved in those transactions, remain disputed questions. But these are genuine issues of material fact, which the Court "cannot resolve" when considering cross-motions for summary judgment.  *See McBurney v. Cuccinelli*, 780 F. Supp. 2d 439, 445 (E.D. Va. 2011) (citing *Monumental Paving & Excavating, Inc. v. Pa. Mfrs' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999)).  Instead, the Court sets the metes and bounds of CGH's unjust enrichment claim.  Namely, CGH cannot recover on any portion of its unjust enrichment claim that relies on an alleged transaction predating November 23, 2017.  In Virginia, "the statute of limitations for unjust enrichment begins to run at the time the unjust enrichment occurred, which is the moment the expected compensation is not paid."  *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004).  Again, CGH is not precluded from arguing that the calculations or entries in the ledger are inaccurate.  But in any event, its theory of liability will be limited to showing unjust enrichment within the three-year limitations period.

Although a bevy of tolling doctrines allow exceptions to a statute of limitations, none relax the three-year time bar that governs CGH's unjust enrichment claim.  The discovery rule does not apply to unjust enrichment claims; the period "begins to run at the time the unjust enrichment occurred . . . not when a party 'knew or should have known' of the unjust enrichment."  *Rahman*, 873 F. Supp. 2d at 730 (quoting *Tao*, 299 F. Supp. 2d at 576).

The Court is unaware of any case law in this jurisdiction suggesting equitable tolling is available for unjust enrichment claims specifically.  Even so, parties seeking to toll the statute of limitations "must show that (1) they diligently pursued their rights, but (2) an extraordinary

circumstance prevented them from timely filing their claim." *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Equitable tolling is an "extraordinary remedy in this circuit," and a party seeking to invoke the doctrine faces a "considerable burden" in doing so. *Wynne*, 792 F.3d at 476. CGH has not made a showing of diligence or that any extraordinary circumstances prevented the timely filing of its claim.

The parties have litigated, both at the motion-to-dismiss stage and now on summary judgment, a purported "illusory" payment date relating to a "sham promissory note" in which Traditions transferred millions of dollars in assets to CIH Technology. Dkt. 34 ¶ 22. At least three circumstances prevent CGH from relying on this promissory note to move its unjust enrichment claim's accrual date as to CIH Technology.

First, CGH's own pleading states that "*H99DT* relies on a sham promissory note . . .". Dkt. 34 ¶ 22 (emphasis added). Although H99DT claims an ownership interest in CIH Technology, they are separate entities, and H99DT's reliance on the sham promissory note does not affect the accrual date of any claim against CIH Technology.

Second, CGH has not met its burden of demonstrating how the purportedly sham note constitutes an extraordinary circumstance that would permit equitable tolling here; the argument is unsupported by reference to any authority.

Next, CGH Investment's argument that its unjust enrichment claim against CIH will not accrue until the end of the trial on H99DT's breach of fiduciary duty claim is a non-starter: the Court has entered summary judgment against H99DT on its fiduciary breach claim, and there will therefore be no trial on that cause of action. Similarly, CGH's arguments about its declaratory judgment claim asserted against other parties, CIH's incomplete discovery, or the question of

18

remedies provide no basis for equitably tolling the statute of limitations period.

### C. H99DT's Motion for Summary Judgment

H99DT also moves for summary judgment on Germaine Harmon's unjust enrichment counterclaim and CGH Investment's unjust enrichment crossclaim. H99DT filed a separate Reply in support of its Motion for Summary Judgment but requests that CIH Technology's memorandum be deemed a memorandum in support of H99DT's motion for purposes of Local Civil Rule 7(F)(1). This Court grants that request.

#### 1. Germaine Harmon's Unjust Enrichment Counterclaim Against H99DT

H99DT asks the Court to enter summary judgment in its favor on Germaine Harmon's unjust enrichment counterclaim. On summary judgment, Defendant Germaine Harmon has not presented facts from the record tending to show any injury that she *personally*—that is, apart from her ownership share in CGH Investment—has suffered. Rather, the summary judgment record is clear that *CGH* has adequately alleged an injury, yet the breadth of that injury remains somewhat undefined. Still, there is no disputing that CGH's alleged pecuniary loss is undoubtedly an injury in fact. *Cf. Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) ("[T]he shareholders claim that the FHFA transferred the value of their property rights in Fannie Mae and Freddie Mac to Treasury, and that sort of pocketbook injury is a prototypical form of injury in fact.").

But all of this says nothing of Germaine Harmon's ability to recover against H99DT on an unjust enrichment theory. For substantially the same reasons stated in Section III(B)(1) of this opinion, the Court finds that the summary judgment record makes clear that Germaine Harmon lacks standing to pursue an unjust enrichment claim against H99DT. This Court therefore grants H99DT's Motion for Summary Judgment as to Germaine Harmon's unjust enrichment counterclaim.

*2. CGH Investment Management's Unjust Enrichment Crossclaim Against H99DT*

H99DT also seeks summary judgment on CGH Investment's unjust enrichment crossclaim. Assuming that CGH Investment is able to satisfy each of the elements of its claim for unjust enrichment against H99DT, its claim accrued when funds were transferred. Any such transfers occurring before November 23, 2017 are barred by the applicable three-year statute of limitations for unjust enrichment claims. Transactions made on or after that date, whatever their amount, are not time-barred and are cognizable. H99DT, like CIH Technology, appears to concede that this figure totals at least $45,000. *See* Dkt. 206 at 10. CGH, of course, must still prove each element of an unjust enrichment claim under Virginia law to ultimately prevail.

First, it is not apparent that CGH may maintain an unjust enrichment claim—a quasi-contract theory of liability—for an alleged breach of a "sham promissory note" with an "illusory" payment date, which instead turns on traditional contract breach principles. But CGH does not bring a claim for breach of contract against any party. Second, to the extent any part of CGH's unjust enrichment claim fairly arises from this alleged sham promissory note, though, that claim accrued upon CGH's first failure to comply with its terms and make payment as directed. Any unjust enrichment recovery from this event is therefore time-barred.

As the Court has already observed, Defendants have presented no argument that persuades this Court to apply any tolling exception in CGH's favor. The discovery rule plainly does not apply to unjust enrichment claims. *See Rahman*, 873 F. Supp. 2d at 730. As for equitable tolling, diligently pursuing one's rights is a core requirement of the doctrine, *Holland*, 560 U.S. at 649, and on this record, the Court does not find such diligence was performed. Neither has CGH carried its considerable burden to prove an extraordinary circumstance that might allow this Court to excuse CGH's failure to file an unjust enrichment claim before November of 2020. If Traditions'

books were truly in such poor order for so long, as CGH alleges, that fact reflects both on Tim and Therese Harmon's maladministration and the other partners' failure to closely monitor Traditions' financial records.  In the end, "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes."  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).  Here, CGH has not cleared the high hurdle of equitable tolling, and this Court will not supplant the statute of limitations on its unjust enrichment claim against H99DT.

Furthermore, CGH Investment's arguments about the timeliness of H99DT's Motion for Summary Judgment have largely been rendered moot by the posture of this litigation, with no trial date currently set on the Court's docket.  To the extent Germaine Harmon and CGH press arguments regarding H99DT's regrettable discovery misconduct, the Court has addressed those issues in its opinion upholding the Magistrate Judge's sanctions.  H99DT remains bound by the August 6, 2021 Sanctions Order, this Court will continue to enforce its terms, and the Court will fashion an additional remedy for ignoring its orders when it resolves the Joint Motion for Attorneys' Fees.

*** 

In sum, the claims remaining for resolution are (1) the portions of CGH Investment's unjust enrichment claims against CIH Technology and H99DT that are not time-barred; (2) Germaine Harmon's declaratory judgment claims brought against H99DT and CGH Investment; and (3) CGH Investment's declaratory judgment claims brought against H99DT and Germaine Harmon. At the March 2, 2022 final pretrial conference, the parties should be prepared to address the issues raised in Defendants Germaine Harmon's and CGH Investment's Motion for Findings of Fact and Conclusions of Law, and particularly, adjudication of the remaining issues in light of the Court's

summary judgment ruling.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Germaine Harmon's Motion for Summary Judgment (Dkt. 64) is GRANTED; and it is

FURTHER ORDERED that CIH Technology's Motion for Summary Judgment as to Germaine Harmon's Unjust Enrichment Counterclaim and for Partial Summary Judgment as to CGH Investment Management's Crossclaim (Dkt. 176) is GRANTED; and it is

FURTHER ORDERED that the H99DT Trustee's Motion for Summary Judgment as to Germaine Harmon's Unjust Enrichment Counterclaim and for Partial Summary Judgment as to CGH Investment Management's Crossclaim (Dkt. 179) is GRANTED; and it is

FURTHER ORDERED that the parties' motions *in limine* (Dkt. Nos. 182; 185; 189) and electronic device applications (Dkt. Nos. 217; 224) are DENIED AS MOOT.

It is SO ORDERED.

Alexandria, Virginia
March 1, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge