IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| THERESE HARMON, Trustee, THE HARMON 1999 DESCENDANTS' TRUST, )<br>)<br>) | |
| Plaintiff, )<br>) | |
| v. ) | Civil Action No. 1:20-cv-1442 (RDA/WEF) |
| GERMAINE F. HARMON, )<br>) | |
| Defendant/Third-Party Plaintiff, )<br>) | |
| v. )<br>) | |
| CGH INVESTMENT MANAGEMENT, LLC,<br>as successor in interest to TRADITIONS, LP, )<br>)<br>) | |
| Third-Party Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Therese Harmon's ("Therese Harmon" or the "H99DT Trustee") Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion to Dismiss") (Dkt. 264) and Motion for Judgment on the Pleadings (Dkt. 261). The Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). These Motions have been fully briefed and are now ripe for disposition. Considering the Motions together with the H99DT Trustee's Memoranda in Support (Dkt. Nos. 265; 262), Defendant and Third-Party Plaintiff Germaine F. Harmon ("Germaine Harmon") and Third-Party Defendant CGH Investment Management LLC's ("CGH") Oppositions (Dkt. Nos. 268; 266), and the H99DT Trustee's Replies (Dkt. Nos. 271; 267), the Court DENIES the H99DT Trustee's Motion to Dismiss and DENIES the H99DT Trustee's Motion for Judgment on the Pleadings for the reasons that follow.

I. BACKGROUND

A. Factual Background

The following individuals and entities are parties to this litigation. Therese Harmon, the current Trustee of the Harmon 1999 Descendants' Trust ("H99DT" or the "Trust"), is a Virginia citizen. Dkt. 1 ¶ 1. Germaine Harmon is a Florida resident. Dkt. 5 ¶ 40. She is a member of CGH, *id.*, and she was the Trustee of H99DT from June 1, 2007 through December 5, 2019, Dkt. 1 ¶ 2. CGH is a Florida limited liability company and the successor in interest to Traditions, LP ("Traditions"), a Delaware limited partnership. Dkt. 34 ¶ 3.

At the heart of this civil action is a disappointing and pitched family quarrel over money. When Germaine Harmon's late husband, Charles M. Harmon, Jr., died in January of 1997, he left substantial assets to his family, including interests in businesses, real estate, securities, and cash. Dkt. 1 ¶ 5. In addition to his wife, Charles left behind four children—Timothy ("Tim") Harmon, Jennifer Gaffney, Paul Harmon, and Charles B. Harmon. *Id.* ¶ 6. Therese Harmon is married to Tim Harmon. *Id.* ¶ 1. In February of 1999, a limited partnership known as Traditions was formed. *Id.* ¶ 7. The partnership sought to manage the assets that the surviving members of the family inherited from the late Charles M. Harmon, Jr. *Id.* As time passed, Germaine Harmon and each of her four children would all invest in and become partners of Traditions—either directly or through other entities. *Id.* ¶ 7. While Germaine Harmon was a limited partner of Traditions, her son, Tim Harmon, held power of attorney for her. Dkt. 5 ¶ 49.

Traditions was created by a 1999 partnership agreement, which remained in place until Traditions was converted to CGH Investments in July of 2020. Dkt. Nos. 5 ¶ 50; 34 ¶ 10. That partnership agreement included certain requirements for the transfer of partnership assets, including its prescription of various corporate formalities when partnership assets are transferred.

2

Dkt. Nos. 5 ¶ 51; 34 ¶ 11.  On June 7, 1999, Tim and Therese Harmon, as settlors, created another trust, H99DT, with Tim Harmon as the original Trustee.  Dkt. 1 ¶ 1.  Therese Harmon alleges that, "[b]y 2006, H99DT became a limited partner of Traditions by agreement of the partners." *Id.* ¶ 8. Germaine Harmon and CGH, however, dispute that H99DT was ever a limited partner in Traditions, arguing that any partnership interest in Traditions that was purportedly transferred to H99DT violated the 1999 partnership agreement.  Dkt. Nos. 5 ¶ 52; 34 ¶ 12.

For many years, Tim Harmon exercised operational control over Traditions.  In the summer of 2002, Tim Harmon executed a transaction through which Traditions was allocated stock in a special purpose entity called World Data Ventures ("WDV").  Dkt. 1 ¶ 9.  WDV acquired COMSAT International, Inc. from Lockheed Martin and, shortly thereafter, WDV changed its name to COMSAT International Holdings, LLC.  *Id.*  In June 2007, COMSAT International, Inc. was sold for a substantial profit.  *Id.* ¶ 10.  Therese Harmon claims that Traditions' proceeds from the COMSAT sale were intended for the sole benefit of H99DT.  *Id.*  Indeed, between 2008 and 2018, Tim Harmon, Therese Harmon, and their children used proceeds from the sale of the COMSAT stock to fund their living expenses.  *Id.* ¶ 11.  Germaine Harmon and CGH, however, maintain that the proceeds from the COMSAT sale were allocable to the partners of Traditions, and because H99DT had never been properly admitted into Traditions, it therefore had no right to those proceeds.  Dkt. Nos. 5 ¶ 54; 34 ¶ 14.

Between 2009 and 2011, Traditions transferred approximately $15 million to an entity called Fame Trading Limited (Fame), which was beneficially owned by Traditions.  Dkt. 34 ¶ 17. Fame then used these funds to finance an entity known as AGI that was being restructured in bankruptcy.  *Id.* ¶ 18.  After emerging from bankruptcy, Fame held a 94.5% equity stake in AGI. *Id.*  The operations of AGI were then divided among related legal entities known collectively as

Astrata. *Id.* ¶ 20. Those Astrata entities were organized under CIH Technology ("CIH"), a holding company partly owned by H99DT. *Id.* CGH alleges that, later, through a series of "sham transactions," Fame was dissolved, its equity interests in Astrata were extinguished, and CIH improperly claimed 100% ownership of Astrata, thereby unjustly enriching H99DT to the detriment of Traditions. *Id.* ¶¶ 17-24.

On August 20, 2019, Germaine Harmon, on her own behalf and on behalf of Traditions, sued Tim Harmon in Florida state court ("the Florida lawsuit") for various causes of action related to his management of the partnership. Dkt. 1 ¶ 16. Therese Harmon, as Trustee of H99DT, in turn, brought the instant action against Germaine Harmon in this Court on November 23, 2020, alleging that H99DT and its beneficiaries "have been cut off from access to substantial funds belonging to the Trust" that, according to H99DT, should be allocated to the Trust's capital account from the "assets held by Traditions." *Id.* ¶ 24.

B. Procedural Background

On November 23, 2020, the H99DT Trustee, on behalf of H99DT, filed a one-count Complaint seeking relief against Germaine Harmon for breach of fiduciary duty. Dkt. 1. In response, Germaine Harmon asserted a Counterclaim against H99DT and a Third-Party Complaint against CGH on December 28, 2020. Dkt. 5. Count 1 of the Counterclaim and Third-Party Complaint sought a declaratory judgment against H99DT and CGH that Traditions never admitted H99DT as a limited partner into Traditions, *id.* ¶¶ 65-73, and Count II asserted a claim for unjust enrichment against H99DT, *id.* ¶¶ 74-78. The Court issued a scheduling order, and discovery began. Dkt. 24. CGH then brought a crossclaim and counterclaim against H99DT and Germaine Harmon, respectively, seeking a declaratory judgment that H99DT has never been a partner in Traditions, as well as a crossclaim against H99DT for unjust enrichment. Dkt. 34. The H99DT

4

Trustee moved to dismiss both Germaine Harmon's unjust enrichment counterclaim and CGH's unjust enrichment crossclaim, Dkt. Nos. 16; 48, and the Court denied those motions on September 29, 2021, Dkt. 166.

On August 6, 2021, Magistrate Judge Theresa C. Buchanan issued an order imposing sanctions on H99DT for repeated discovery misconduct and production deficiencies. Dkt. 129. This Court upheld the Sanctions Order on November 19, 2021. Dkt. 211. Earlier, on April 9, 2021, Germaine Harmon moved for summary judgment on H99DT's breach of fiduciary duty claim. Dkt. 64. On October 27, 2021, the H99DT Trustee moved for summary judgment on Germaine Harmon's unjust enrichment claim and for partial summary judgment on CGH's unjust enrichment claim. Dkt. 179. Subsequently, on November 30, 2021, Germaine Harmon moved for entry of proposed findings of fact and conclusions of law. Dkt. 227. That same day, the Court removed the jury trial from the Court's calendar. Dkt. 228.

In its March 31, 2022 Memorandum Opinion and Order (the "Summary Judgment Opinion"), the Court granted Germaine Harmon's Motion for Summary Judgment and the H99DT Trustee's Motion for Summary Judgment. Dkt. 248. Following the Court's Summary Judgment Opinion, the only claims that remain are Germaine Harmon's and CGH's declaratory judgment claims and a portion of CGH's unjust enrichment claim.[1]

On March 2, 2022, the Court held oral argument on the status of the case in light of its rulings on the cross-motions for summary judgment. Dkt. 249. At oral argument, counsel for Germaine and CGH averred that everything in the instant case turned on the declaratory relief claims. Dkt. 268, Ex. 1 at 46-48 (Oral Argument Transcript). At the conclusion of that hearing,

---

[1] This Court's Summary Judgment Opinion limited CGH's unjust enrichment claim to fund transfers on or after November 23, 2017. Dkt. 248 at 20.

5

the Court ordered the parties to file briefs as to what they believed were the issues remaining after the Court's Summary Judgment Opinion. Dkt. 268, Ex. 1 at 57-58. In response to the Court's directive, counsel for the parties submitted a Joint Notice, stipulating that the "first" step in resolving all other issues required the resolution of "Germaine Harmon's and CGH's requests for declaratory judgment as to whether or not H99DT was admitted as a limited partner in Traditions," along with any ancillary "remedies" the ruling implicated. Dkt. 251 at 1. The parties further stipulated that, after the declaratory relief claim was resolved, the next step would be to determine whether H99DT is liable to CGH for unjust enrichment and, if so, the remedy for such claims. *Id.* at 2.

On August 9, 2022, the H99DT Trustee filed a Motion to Substitute Attorney, Dkt. 256, which Magistrate Judge William E. Fitzpatrick granted on August 19, 2022, Dkt. Nos. 258; 259. The H99DT Trustee subsequently filed two motions: a Motion for Judgment on the Pleadings and a Motion to Dismiss. Dkt. Nos. 261; 264. Germaine Harmon and CGH opposed the first motion on September 16, 2022, Dkt. 266, and the second on September 27, 2022, Dkt. 268. The H99DT Trustee filed a Reply in support of its Motion for Judgment on the Pleadings on September 22, 2022, Dkt. 267, and a Reply in support of its Motion to Dismiss on October 3, 2022, Dkt. 271. This Court resolves the H99DT Trustee's Motion to Dismiss and Motion for Judgment on the Pleadings today and reserves judgment on Germaine Harmon's Motion for Proposed Findings of Fact and Conclusions of Law.[2]

---

[2] Germaine Harmon and CGH Investment's Motion for Entry of Reserved Rule 37 Sanctions (Dkt. 272) has been referred to Magistrate Judge William E. Fitzpatrick and remains under advisement.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction. In considering a 12(b)(1) motion to dismiss, the burden is on the non-moving party to prove that subject-matter jurisdiction is supported. *United States v. Hays*, 515 U.S. 737, 743 (1995). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

There are two ways in which the moving party may prevail on a 12(b)(1) motion. First, the moving party may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under this method of attack, all facts as alleged by the non-moving party are assumed to be true. *Id.* However, conclusory statements and legal conclusions in a complaint are not entitled to a presumption of truth. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).

Alternatively, and as is the case here, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Cochran v. Ballard*, No. 2:17-CV-04312, 2019 WL 2323742, at *6 (S.D.W. Va. May 8, 2019) ("Defendants are bringing a factual challenge to this Court's jurisdiction over Plaintiff's complaint, alleging that subsequent developments have removed the factual basis for jurisdiction."). Under this latter approach, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

B. Rule 12(c) Motion

A party may move for judgment on the pleadings at any time after the pleadings are closed—but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of review for Rule 12(c) motions is the same as the "plausibility standard" governing Rule 12(b)(6) motions. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Travelers Indem. Co. of Connecticut v. Lessard Design, Inc.*, 321 F. Supp. 3d 631, 635 (E.D. Va. 2018). A motion for judgment on the pleadings challenges a claim's sufficiency; "it does not resolve disputes over factual issues, the merits of a claim, or the applicability of a defense." *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, 861 F. Supp. 2d 733, 735 (E.D. Va. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Thus, "judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief[.]" *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

"[U]nlike a Rule 12(b)(6) motion," however, "a Rule 12(c) motion 'requires the court to consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage of the litigation.'" *Somerville v. W. Town Bank & Tr.*, No. CV 19-490 PJM, 2020 WL 8256358, at *1 (D. Md. Dec. 4, 2020) (quoting *Murphy v. Dep't of the Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018)). A motion for judgment on the pleadings "should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." *United States v. Castillo*, No. 8:19-CV-3459-PWG, 2021 WL 825974, at *3 (D. Md. Mar. 4, 2021) (quoting *Shooting Point, LLC v. Cumming*, 238 F.Supp.2d 729, 735 (E.D. Va. 2002)).

The burden on the moving party is a high one, *i.e.*, the moving party must show that its entitlement to judgment is a "certainty." *Great Am. Ins. Co. v. GRM Mgmt., LLC*, No. 3:14CV295, 2014 WL 6673902, at *2 (E.D. Va. Nov. 24, 2014); *see also Castillo*, 2021 WL 825974, at *1 (denying Rule 12(c) motion where the pleadings did not "clearly, unequivocally, and convincingly establish the absence of genuine issues of material facts"). In deciding the motion, the Court "may consider the complaint, answers, matters of public record, exhibits to the complaint and answer, and 'exhibits to the Rule 12(c) motions that were integral to the complaint and authentic.'" *Bremus v. AMR Corp.*, 527 B.R. 221, 225 (E.D. Va. 2014), *aff'd*, 604 F. App'x 324 (4th Cir. 2015) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014)).

## III. ANALYSIS

The H99DT Trustee moves this Court to dismiss Germaine Harmon's and CGH's declaratory judgment claims for lack of subject matter jurisdiction, or, in the alternative, to grant judgment on the pleadings in the H99DT Trustee's favor on those claims. The Court addresses each motion in turn.

### A. The H99DT Trustee's Motion to Dismiss for Lack of Subject Matter Jurisdiction

A declaratory judgment action must satisfy the case-or-controversy requirement of Article III, § 2, of the U.S. Constitution.[3] To do so, the action must allege facts that "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

---

[3] This Court notes that the Declaratory Judgment Act likewise "limit[s] federal courts to adjudication of actual cases or controversies." *Work v. U.S. Trade, Inc.*, 747 F. Supp. 1184, 1189 (E.D. Va. 1990); *see* 28 U.S.C. § 2201(a) (providing that "*[i]n a case or controversy* within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" (emphasis added)); *see also Abbvie Inc. v. Medimmune Ltd.*, No. 2:16-CV-322, 2017 WL 6211099, at *2 (E.D. Va. Jan. 26, 2017), *aff'd*, 881 F.3d 1334 (Fed. Cir. 2018) ("The Declaratory Judgment Act is not an independent basis for jurisdiction. 28 U.S.C. § 2201 gives courts the power to provide declaratory relief when there is an actual controversy within the court's jurisdiction.").

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Ince, et al.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil, Co.*, 312, U.S. 270, 273 (1941)). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)).

Here, the H99DT Trustee argues that there is no longer a justiciable Article III case or controversy over whether H99DT is a partner in Traditions. Dkt. 265. According to the H99DT Trustee, at the outset of this litigation, its breach of fiduciary duty claim, which was premised on Germaine Harmon's refusal to treat H99DT as a partner in Traditions, created a case or controversy sufficient to confer on this Court jurisdiction over Germaine Harmon's and CGH's declaratory judgment counts. Dkt. 265 at 2. However, the H99DT Trustee explains, once the Court entered judgment in favor of Germaine Harmon on the breach of fiduciary duty claim, the pending factual allegations were reduced to the point where subject matter jurisdiction for the declaratory judgment counts no longer exists. *Id.*

Germaine Harmon and CGH disagree that this Court's Summary Judgment Opinion eliminated all claims pertaining to H99DT's status as a partner in Traditions.[4] Dkt. 268. They

---

[4] Germaine Harmon and CGH also invoke the voluntary cessation doctrine in arguing that the declaratory judgment counts are not moot. Dkt. 268 at 12-13. Germaine Harmon and CGH assert that, to avoid a declaration of rights, the H99DT Trustee would have to unconditionally and irrevocably covenant to withdraw its claim to Traditions' limited partnership. *Id.* at 14. According to Germaine Harmon and CGH, it is clear that H99DT has not voluntarily and permanently ceased claiming to be a limited partner of Traditions given that there are two pending state court lawsuits in which H99DT continues to litigate the limited partnership dispute. *Id.* As the H99DT Trustee correctly points out, however, the voluntary cessation doctrine is inapplicable here. Germaine Harmon and CGH only cite cases in which a party had already signed an unconditional and irrevocable covenant not to sue, dismissed its claim, and then sought dismissal of any counterclaim or remaining claim from an opposing party. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013);

10

maintain that the partnership issue is intrinsically tied to the remaining portion of CGH's unjust enrichment claim.[5]  *Id.* at 11.  Specifically, Germaine Harmon and CGH explain that certain email records that H99DT withheld from production show that Tim Harmon converted a $48 million asset of Traditions into an asset of H99DT's by altering CIH's tax reporting documents in September and October of 2020.[6]  *Id.*  According to Germaine Harmon and CGH, H99DT's defense of this conduct is directly related to the declaratory judgment action.  *Id.*  The Trust claims to have a large capital account within Traditions that it could draw upon.  *Id.*  Thus, if H99DT is not a limited partner of Traditions and consequently has no capital account, then H99DT's justification for its conduct is no longer viable.  *Id.*

For the reasons stated by Germaine Harmon and CGH, this Court finds that the partnership issue does in fact support the "live dispute" over whether H99DT unjustly enriched itself. Accordingly, the declaratory judgment claims satisfy the Article III case or controversy requirement and this Court retains subject matter jurisdiction over those claims.

---

*Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21CV252, 2022 WL 107184, at *6 (E.D. Va. Jan 11, 2022).  The courts then interpreted the signed unconditional and irrevocable covenant not to sue to ascertain if it was indeed unconditional and irrevocable so as to invoke the voluntary cessation doctrine.  *See Already, LLC*, 568 U.S. at 90 (finding that Nike's unconditional irrevocable covenant not to sue was sufficient to meet the voluntary cessation doctrine to dismiss Already's claim); *Synopsys, Inc.*, 2022 WL 107184, at *6 (interpreting the unconditional irrevocable covenant and finding that it could be revoked, so the lawsuit should remain pending).  The voluntary cessation doctrine is not relevant to the instant case because H99DT has not signed such an irrevocable covenant and the H99DT Trustee is not contending that subject matter jurisdiction has been lost based on such a covenant.

[5] The Court notes that even the H99DT Trustee's prior counsel appeared to agree that some of the remaining issues turn on the declaration of rights.  In fact, prior counsel stipulated that the declaratory judgment claims need to be resolved as the very next issue.  *See* Dkt. 251 at 1 (asking this Court in a Joint Notice to "*first* resolve Germaine Harmon's and CGH's requests for declaratory judgment as to whether or not H99DT was admitted as a limited partner in Traditions").

[6] As mentioned *supra* note 1, this Court has already held in its Summary Judgment Opinion that such post-November 23, 2017 transfers of funds from Traditions to H99DT are not barred by the applicable three-year statute of limitations for CGH's unjust enrichment claim.  Dkt. 248 at 20.

B. The H99DT Trustee's Motion for Judgment on the Pleadings

Having determined that this Court has subject matter jurisdiction over Germaine Harmon's and CGH's declaratory judgment claims, we now turn to the H99DT Trustee's Motion for Judgment on the Pleadings. In support of her motion, the H99DT Trustee argues that Germaine Harmon's and CGH's pleadings indisputably establish as a matter of law that H99DT was admitted to Traditions as a partner in 2004. Dkt. 262 at 1. The H99DT Trustee points out that, in the instant case, Germaine Harmon and CGH allege that "H99DT claims to be a limited partner of Traditions, having allegedly *transferred* Timothy Harmon's interest in the partnership in 2006." *Id.* at 4 (emphasis added) (quoting Dkt. Nos. 5 ¶ 52; 34 ¶ 12). However, according to the H99DT Trustee, Germaine Harmon's and CGH's pleadings incorporate the Florida lawsuit against Tim Harmon, in which Germaine Harmon and Traditions (the predecessor in interest to CGH) acknowledged that H99DT was *added* as a limited partner to Traditions. *Id.* at 2 (citing Dkt. 22-1 ¶¶ 21, 26, 39 (the Florida lawsuit complaint) ("Tim has unilaterally removed limited partners, including Jenn, and added his Family Trust as a limited partner to Traditions.")).

The H99DT Trustee explains that this distinction is significant, given that the partnership agreement requires a transfer of a partnership interest to be in writing but contains no such writing requirement for adding a limited partner. *Id.* at 4 (citing Dkt. 22-1, Ex. A ¶ 6.1).[7] The H99DT Trustee asserts that because the undisputed facts incorporated into Germaine Harmon's and CGH's pleadings establish that H99DT was added as a limited partner of Traditions, they cannot now ask

---

[7] It is undisputed that there is no such written evidence of a transfer of partnership interest here. Dkt. Nos. 262 at 4 (The H99DT Trustee asserting that "[t]here is no writing because H99DT was added as a limited partner in accordance with the Limited Partnership Agreement and no writing was necessary"); 5 ¶ 52 (Germaine Harmon alleging that there is "no documentation to evince that any such interest was properly transferred"); 34 ¶ 12 (CGH alleging that there is "no documentation to evince that any such interest was properly transferred").

12

the Court for a declaratory judgment that H99DT was not properly admitted to Traditions. *Id.* at 5.

In response, Germaine Harmon and CGH maintain that (1) their pleadings do not incorporate by reference the Florida lawsuit and, (2) regardless, the H99DT Trustee mischaracterizes the allegations they made in that lawsuit. Dkt. 266 at 8-11. This Court agrees with Germaine Harmon and CGH on both fronts.

As a general rule, a document is deemed "incorporated by reference" when the complaint turns on the existence of the document. *See Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("Although the complaint included a few quotes from and references to the Incident Report, Goines' claims do not turn on, nor are they otherwise based on, statements contained in the Incident Report."). This Court has further instructed that "incorporation by reference . . . 'must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.'" *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1326 (3d ed. 2004)).

In the instant case, the H99DT Trustee alleged in its Complaint that "Germaine [Harmon] filed a lawsuit against Tim [Harmon] in state court in Florida in which she asserted, among other things, that H99DT was not entitled to one hundred percent of the proceeds of sale of the COMSAT stock." Dkt. 1 ¶ 16. In her Answer to the Complaint, Germaine Harmon admitted that she and Traditions filed that lawsuit and that "the lawsuit speaks for itself." Dkt. 5 ¶ 16. This Court finds that such a passing reference to the Florida lawsuit in response to another party's allegation does not evince an intent to invoke the incorporation by reference doctrine.

13

Moreover, even if we were to consider the allegations in the Florida lawsuit, Germaine Harmon did not concede that H99DT was *properly* admitted as a partner of Traditions. In fact, Germaine Harmon alleged that Tim Harmon breached the partnership agreement by adding H99DT as a limited partner to Traditions. Dkt. 22-1 ¶ 21 ("Upon information and belief, Tim has unilaterally removed limited partners, including Jenn, and added his Family Trust as a limited partner to Traditions in breach of Traditions' partnership agreement[.]").[8] Accordingly, even considering the Florida lawsuit allegations, there is a material dispute as to the partnership issue, and resolving the declaratory judgment claims pursuant to the instant Motion for Judgment on the Pleadings would thus be inappropriate. *See Trice v. Oliveri & Associates, LLC*, No. CV GLR-19-3272, 2022 WL 36451, at *5 (D. Md. Jan. 4, 2022) ("[A] Rule 12(c) motion requires . . . that there [be] no meaningful disputes as to the facts[.]").

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the H99DT Trustee's Motion to Dismiss (Dkt. 264) is DENIED and the H99DT Trustee's Motion for Judgment on the Pleadings (Dkt. 261) is DENIED; and it is

FURTHER ORDERED that the parties submit briefs within thirty (30) days of this Memorandum Opinion and Order with their positions on whether holding a bench trial on any of the remaining claims is necessary or whether the remaining claims should be decided pursuant to

---

[8] While the partnership agreement does not require a written agreement to add a limited partner, it provides that "[n]o additional Partners will be admitted as a Partner without the consent of Partners holding in the aggregate Capital Account balances representing at least 50% of the total Capital Account balances of all Partners in the Partnership." Dkt. 22-1, Ex. A ¶ 4.2. The H99DT Trustee now asserts that this requirement was met when Tim Harmon voted to admit H99DT and Germaine Harmon, through Tim Harmon's exercise of his power of attorney for her, likewise voted to admit H99DT. Dkt. 262 at 5. Germaine Harmon and CGH, meanwhile, allege that this "secret vote" theory was an after-the-fact fabrication. Dkt. 266 at 12.

Germaine Harmon and CGH's Motion for Findings of Fact and Conclusions of Law (Dkt. 227).

The parties' briefs are not to exceed fifteen (15) pages.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
May 25, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge

15