IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

THERESE HARMON, Trustee, THE HARMON      )
1999 DESCENDANTS' TRUST,                  )
                                          )
    Plaintiff/Counterclaim Defendant,    )
                                          )
    v.                                   )        Civil Action No. 1:20-cv-1442
                                          )        (RDA/WEF)
GERMAINE F. HARMON,                       )
                                          )
    Defendant/Third-Party Plaintiff,     )
                                          )
    v.                                   )
                                          )
CGH INVESTMENT MANAGEMENT, LLC,           )
as successor in interest to TRADITIONS, LP, )
                                          )
    Third-Party Defendant.               )

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court for resolution following a one-day bench trial conducted on November 14, 2023.  At issue at the bench trial were Defendant and Third-Party Plaintiff Germaine F. Harmon ("Germaine Harmon")'s and Third-Party Defendant CGH Investment Management LLC's ("CGH") respective counterclaim and crossclaim for declaratory judgment against Plaintiff and Counterclaim Defendant The Harmon 1999 Descendants' Trust ("H99DT" or the "Trust").  Based on all the evidence presented at trial, including the Court's assessment of the credibility of the witnesses and the weight to be given to each piece of evidence, together with the reasonable inferences drawn from that evidence, the Court enters judgment in favor of Germaine Harmon on Count I of her counterclaim and enters judgment in favor of CGH on Count I of its crossclaim.  In support of this verdict, the Court issues the following findings of

fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[1]

## I. FINDINGS OF FACT

### A. The Relevant Parties, Entities, and the Partnership Agreement

The following individuals and entities are parties to this litigation. Therese Harmon is the current Trustee of H99DT. Dkt. 314 (Joint Stipulation of Undisputed Facts) ¶ 2. Germaine Harmon is a member of CGH, Dkt. 5 (Germaine Harmon's Counterclaim and Third-Party Complaint) ¶ 40, and she was the Trustee of H99DT from June 7, 2007 through June 9, 2020, Dkt. 314 ¶ 21. CGH is the successor in interest to Traditions, LP ("Traditions"), a Delaware limited partnership. Dkt. 314 ¶ 15.

When Germaine Harmon's late husband, Charles M. Harmon, Jr., died in January 1997, he left substantial assets to his family, including interests in businesses, real estate, securities, and cash. *Id.* ¶ 5. In addition to his wife, Charles left behind four children—Timothy ("Tim") Harmon, Jennifer Gaffney, Paul Harmon, and Charles B. Harmon. *Id.* ¶ 4. Therese Harmon is married to Tim Harmon. *Id.* ¶ 23. In February 1999, a family limited partnership known as Traditions was formed. *Id.* ¶ 6. The partnership sought to manage the assets that the surviving family members inherited from the late Charles M. Harmon, Jr. *Id.*

Traditions was created by a 1999 partnership agreement ("the Partnership Agreement"), which remained in place until Traditions was converted to CGH Investments in July of 2020. Dkt. Nos. 5 ¶ 50; 34 ¶ 10 (CGH's Answer). Traditions' initial limited partners were identified on Schedule 1 of the Limited Partnership Agreement. Dkt. 314 ¶ 10. Those original partners were

---

[1] Federal Rule of Civil Procedure 52(a) provides in pertinent part: "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."

the general partner Hercules Technologies, Inc. and the limited partners Germaine Harmon, Timothy Harmon, Paul F. Harmon, the Trust F/B/O Timothy B. Harmon, the Trust F/B/O Paul F. Harmon, and the Charles M. Harmon, Jr. Family Trust.   Defendants' Exhibit ("DX") 2 (the Partnership Agreement) at Schedule 1.   The assets that were contributed to Traditions by the general and limited partners were identified on Schedule 2 of the Limited Partnership Agreement. DX 2 at Schedule 2.   The Partnership Agreement included the following provisions governing the addition of new partners:

> 4.2 Additional Partners. No additional Partners will be admitted as a Partner without the consent of Partners holding in the aggregate Capital Account balances representing at least 50% of the total Capital Account balances of all Partners in the Partnership.

> 6.1 Transfers by Partners. Each Partner may Transfer its Partnership Interest . . . in the Partnership only with the consent of Partners holding in the aggregate Capital Account balances representing at least 50% of the total Capital Account balances of all Partners in the Partnership at such time. Notwithstanding the foregoing, no such Transfer will be effective unless and until the Transferee will have executed and delivered to the Partnership an agreement in form and substance satisfactory to the General Partner to be bound by the provisions of this Agreement applicable to the Partnership Interest Transferred . . . .

> 6.3.3 Schedule 1 Amendment. Upon the admission of a Substituted Partner, Schedule 1 will be amended to (1) reflect the name and address of, and the type of Partnership Interest held by, such Substituted Partner, and (2) eliminate the name and address of, and the type of Partnership Interest held by, the Transferor with regard to the Transferred Partnership Interest.

DX 2.

On June 7, 1999, Tim and Therese Harmon, as settlors, created another trust, H99DT, with Tim Harmon as the original Trustee.  Dkt. 314 ¶ 1.  H99DT alleged in its Complaint that, "[b]y 2006, H99DT became a limited partner of Traditions by agreement of the partners."  Dkt. 1 ¶ 8. Throughout the course of this litigation, H99DT has "denie[d] any inference that it was required to agree in writing to be bound by the provisions of the Traditions Partnership Agreement in order

to become a limited partner in Traditions" and has "admit[ted] that it has not yet located a written document where it agreed to be bound by the provisions of the . . . Partnership Agreement." Dkt. 314 ¶ 14.  H99DT has also continued to "claim to be a limited partner of Traditions." Tr. 11:19-23, 18:25-19:7.  Meanwhile, Germaine Harmon and CGH dispute that H99DT is, or was ever, a limited partner in Traditions and assert that any partnership interest in Traditions that was purportedly transferred to H99DT violated the 1999 Partnership Agreement.  Dkt. Nos. 5 ¶ 52; 34 ¶ 12.

In the summer of 2002, Tim Harmon executed a transaction through which Traditions was allocated stock in a special purpose entity called World Data Ventures ("WDV").  Dkt. 1 ¶ 9.  WDV acquired COMSAT International, Inc. from Lockheed Martin and, shortly thereafter, WDV changed its name to COMSAT International Holdings, LLC ("COMSAT").  *Id.*  In June 2007, COMSAT International, Inc. was sold for a substantial profit.  *Id.* ¶ 10.  Therese Harmon claims that Traditions' proceeds from the COMSAT sale were intended for the sole benefit of H99DT.  *Id.*  Indeed, between 2008 and 2018, Tim Harmon, Therese Harmon, and their children used proceeds from the sale of the COMSAT stock to fund their living expenses.  *Id.* ¶ 11.  Germaine Harmon and CGH, however, maintain that the proceeds from the COMSAT sale were allocable to the partners of Traditions, and that, because H99DT had never been properly admitted into Traditions, it has no right to those proceeds.  Dkt. Nos. 5 ¶ 54; 34 ¶ 14.

B. The Court's Sanctions Order and Motions *in Limine* Order

On August 6, 2021, Magistrate Judge Theresa C. Buchanan issued an order imposing sanctions on H99DT for repeated discovery misconduct and production deficiencies (the "Sanctions Order").  Dkt. 129.[2]  This Court upheld Magistrate Judge Buchanan's Sanctions Order

---

[2] It is important to note that the attorneys who represented H99DT at the bench trial were

on November 19, 2021.  Dkt. 211.  The Sanctions Order provides:

> H99DT is precluded from offering its so-called "course of dealing" evidence as to the accounting of Traditions' funds, which includes the alleged oral "understandings" that Tim Harmon utilized to inject H99DT into the partnership, *i.e.*, in support of paragraphs ¶¶ 7-20 of its Complaint and in defense of ¶¶ 47-78 of Germaine Harmon's Counterclaim and the parallel paragraphs of Traditions' claim against H99DT ¶¶ 7-39.

Dkt. 129 at 1.

On October 19, 2023, this Court entered a trial order.  Dkt. 311.  In that Order, the Court permitted the parties to file motions *in limine* by November 3, 2023 and set a motions *in limine* hearing for November 8, 2023.  The parties subsequently filed their motions *in limine* on November 4, 2023.  Dkt. Nos. 315-318; 320-324.  Following the November 8, 2023 hearing, the Court entered an Order resolving all the motions (the "Motions *in Limine* Order").  Dkt. 335.  Of particular significance, consistent with Magistrate Judge Buchanan's Sanctions Order, this Court precluded H99DT from offering at trial "course of dealing" evidence and any evidence "in support of paragraphs ¶¶ 7-20 of its Complaint and in defense of ¶¶ 47-78 of Mrs. Harmon's Counterclaim and the parallel paragraphs of Traditions' claim against H99DT ¶¶ 7-39."  *Id.* at 1-2.  By H99DT's "own definition," this included "tax returns, K-1s, and any other oral or written evidence offered to show the Harmon family's [alleged] acceptance of H99DT as a partner of Traditions for almost twenty years."  *Id.*  The parties were expected to, and did, comply with the Court's Motions *in Limine* Order throughout the trial.

### C. Testimony Heard at the Bench Trial

At the bench trial, Germaine Harmon and CGH called Joshua Barron Angell as a witness.  Mr. Angell credibly testified as follows with respect to the partnership issue.  Mr. Angell has been

---

only retained after the Sanctions Order issued and thus are in no way implicated in the Trust's discovery violations.

the record custodian of Traditions and CGH since approximately March of 2020.  Tr. 22:11-17.

The Partnership Agreement identifies the general partner and limited partners of Traditions.  Tr.

22:24-23:12.  The original Partnership Agreement does not list H99DT as a general or limited

partner of Traditions.  Tr. 23:13-14.  A 2020 amendment to the Partnership Agreement also

identifies the general and limited partners of Traditions as of the time of the amendment.  Tr.

25:25-26:6.  The 2020 amendment does not list H99DT as a general or limited partner of

Traditions.  Tr. 26:7-8.  In his role as record custodian to CGH, Mr. Angell looked for documents

formally admitting H99DT as a partner of Traditions between 1999 and 2020, but he did not find

any such document.  Tr. 26:9-17.  After the 2020 written amendment to the Partnership Agreement,

Traditions was converted from a Delaware limited partnership into CGH, a Florida limited liability

company.  Tr. 26:18-27:2.  The plan of conversion identifies the limited partners of Traditions at

the time of the conversion, and H99DT is not identified as one of the limited partners.  Tr. 27:4-

23.  The plan of conversion also identifies the "members" of the new limited liability company

and, once again, H99DT is not listed as one of them.  Tr. 27:24-28:4.

Mr. Angell also credibly testified that the present need for resolution of H99DT's claim to

a partnership interest (and the COMSAT proceeds) arises from CGH's need to identify its own

assets in order to properly prepare federal income tax returns.  Tr. 30:8-16.  Mr. Angell further

testified that there is a present need to allocate items of profit and loss amongst the owners of

CGH.  Tr. 30:20-24.  Mr. Angell additionally explained that the Internal Revenue Service assesses

certain tax penalties based upon the number of partners in a limited partnership, and so resolution

of the partnership question is necessary for CGH to be able to calculate any tax penalties as well.

Tr. 30:25-31:1-4.  In sum, Mr. Angell testified that CGH is significantly "hamstrung" in its ability

to file a tax return until the instant declaratory judgment action is resolved.  Tr. 37:3-5.

After Germaine Harmon and CGH rested their case, H99DT called Janet Cowgill as a witness. Ms. Cowgill credibly testified as follows. Ms. Cowgill is an accountant at the firm Cowgill & Company. Tr. 41:14-17. She primarily assists clients with income taxes, payroll, and tax planning. Tr. 41:18-19. Ms. Cowgill has worked for individual members of the Harmon family, Traditions, and H99DT, though she has not done any work for CGH. Tr. 42:4-14, 43:17-18. Ms. Cowgill testified that there was some sort of relationship between H99DT and Traditions, but, pursuant to the Sanctions Order and the Motions *in Limine* Order, the Court did not permit Ms. Cowgill to testify regarding the nature of that relationship. Tr. 47:20-23. Following Ms. Cowgill's testimony, H99DT rested its case.

## II. Conclusions of Law

Based on the findings of fact set forth herein, the Court makes the following conclusions of law.

### A. The Declaratory Judgement Claims

#### 1. Whether an Actual Controversy Exists Such That Granting Declaratory Judgment is Proper

In their respective counterclaim and crossclaim, Germaine Harmon and CGH seek entry of declaratory judgment, pursuant to the Declaratory Judgment Act, in their favor. Dkt. Nos. 5 ¶¶ 65-73; 34 ¶¶ 27-34. Specifically, Germaine Harmon and CGH ask this Court to declare that H99DT was never a limited partner of Traditions and thus has no valid claim to any partnership interests. Dkt. Nos. 5 at ¶ 65; 34 ¶ 27.

"Under the Declaratory Judgment Act, a district court, in 'a case of actual controversy within its jurisdiction . . . *may declare* the rights and other legal relations of any interested party seeking such declaration.'" *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) (quoting 28 U.S.C. § 2201(a)). In describing the contours of this discretion, the Fourth Circuit has

instructed that "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)).  Importantly, as the parties moving for declaratory relief, Germaine Harmon and CGH bear "the burden of establishing by a preponderance of the evidence that an actual controversy exists" between the parties.  *Columbia Gas Transmission, LLC v. Ott*, 984 F. Supp. 2d 508, 515 (E.D. Va. 2013) (citation omitted).  In other words, they must show by a preponderance of the evidence that there exists a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests, such that the Court may make an immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged."  *Id.* (internal quotation omitted).

The Court finds that Germaine Harmon and CGH have met this initial burden.  In the instant litigation, H99DT continues to assert a right to the COMSAT proceeds based on its status as a partner of Traditions.  *See* Dkt. 352 at 15 n.6 ("H99DT has a legal interest in the Comsat [sic] funds.  Either it was a partner and properly deposited the funds to its capital account in Traditions, or it deposited the funds to Traditions on the mistaken belief that it was a partner.").  Germaine Harmon and CGH, on the other hand, assert that H99DT was never a partner of Traditions and therefore has no right to the COMSAT assets held in Traditions' name.  Dkt. 351-1 at 12.  The parties' dispute over the partnership issue is thus sufficient to establish an actual controversy.  *See Stone St. Asset Tr. v. Blue*, 821 F. Supp. 2d 672, 677 (D. Del. 2011) ("[I]t is clear that Obey and Stone Street Trust have adverse legal interests because both parties are attempting to claim ownership over the same property.").  Furthermore, Mr. Angell's testimony at the bench trial

established CGH's need for "relief from uncertainty" so that CGH can complete an internal accounting and report its taxes accurately.  Tr. 30:10-31:8; 36:24-38:9.  Accordingly, the Court finds that declaratory relief is appropriate here.

### 2. Whether H99DT is a Partner of Traditions

Having concluded that declaratory judgment is available in the instant case, the Court now turns to the merits of Germaine Harmon's and CGH's declaratory judgment claims.  In its pleadings and Post-Trial Brief, H99DT has promulgated a theory whereby Tim Harmon, as the General Partner of Traditions and through his exercise of power of attorney for Germaine Harmon, voted to admit H99DT into the partnership in compliance with Section 4.2 of the Partnership Agreement.  Dkt. Nos. 262 at 5; 352 at 14; *see also* DX 2 at 4.2 ("Additional Partners. No additional Partners will be admitted as a Partner without the consent of Partners holding in the aggregate Capital Account balances representing at least 50% of the total Capital Account balances of all Partners in the Partnership.").  Magistrate Judge Buchanan's Sanctions Order, however, precluded H99DT from offering any evidence at trial in support of its claim that it became a partner of Traditions and in defense of Germaine Harmon's and CGH's contrary allegations that it was never admitted into Traditions as a partner.[3]  *See* Dkt. 129 ("H99DT is precluded from offering its so-called 'course of dealing' evidence . . . in support of paragraphs ¶¶ 7-20 of its Complaint and in defense of ¶¶ 47-78 of Germaine Harmon's Counterclaim and the parallel paragraphs of Traditions' claim against H99DT ¶¶ 7-39.").

As such, this Court was not presented with any admissible evidence at trial showing that H99DT ever became a partner of Traditions.  Indeed, the evidence presented at trial indicated

---

[3] While this may appear to be a harsh penalty, if discovery sanctions are to have any teeth, parties who engage in repeated, willful violations by withholding discovery materials must face serious consequences.

precisely the opposite.  Specifically, Traditions' partners were identified in the 1999 Partnership

Agreement, the 2020 amendment to the Partnership Agreement, and the 2020 plan of conversion,

and H99DT was listed nowhere in those documents.  Moreover, in the joint stipulations submitted

before trial, H99DT admits that it has not been able to locate any written documentation to support

its theory that it became a partner.  Dkt. 314 ¶ 14.  Accordingly, the Court concludes that H99DT

is not, and never has been, a partner of Traditions and will grant declaratory judgment in favor of

Germaine Harmon and CGH on that basis.

### III. CONCLUSION

For the foregoing reasons, this Court DECLARES that H99DT is not and has never been a

limited partner of Traditions.  It is hereby ORDERED that final judgment is entered in favor of

Germaine Harmon on Count I of her counterclaim for declaratory judgment and that final judgment

is entered in favor of CGH on Count I of its crossclaim for declaratory judgment; and it is

FURTHER ORDERED that H99DT's Rule 52(c) Motion for Judgment is DENIED.

The Clerk is directed to set a status conference for January 24, 2024 at 10:30 a.m. for the

purpose of setting a jury trial on CGH's unjust enrichment claim.  The Clerk is further directed to

forward copies of these Findings of Fact and Conclusions of Law to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
January 18, 2024

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge