IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| THERESE HARMON, Trustee, and<br>THE HARMON 1999 DESCENDANTS' TRUST,<br><br>Plaintiff,<br><br>v.<br><br>GERMAINE F. HARMON,<br><br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>CGH INVESTMENT MANAGEMENT, LLC,<br>as successor in interest to TRADITIONS, LP,<br><br>Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:20-cv-1442<br>(RDA/WEF) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Therese Harmon's Motion to Dissolve the Constructive Trust ("Motion to Dissolve") (Dkt. 379), Defendant Germaine F. Harmon's ("Germaine Harmon") Motion to Enforce Judgment ("Motion to Enforce") (Dkt. 387), and Plaintiff Therese Harmon's Motion for Reconsideration of the Court's December 4, 2024 Order ("Motion for Reconsideration") (Dkt. 400).[1]  These matters are fully briefed and ripe for disposition.  A status conference was held on December 12, 2024.

This case involves a lengthy and complicated factual and procedural history that has been previously set forth in this Court's prior orders and need not be repeated here.  *See, e.g.*, Dkts. 287; 357; 377.  As relevant here, the H99DT Trustee seeks to dissolve the constructive trust imposed as supplemental relief following trial, in an order entered on March 28, 2024.  Dkt. 377.  On the

---

[1] Plaintiff is the Trustee of the Harmon 1999 Descendants' Trust (the "H99DT Trustee") and makes her motions in that capacity.

other hand, Germaine Harmon seeks to enforce the trust and asserts that H99DT, through Timothy Harmon, is violating the spirit of the constructive trust. Dkt. 387. For the reasons set for below, this Court DENIES the H99DT Trustee's Motion to Dissolve and Motion for Reconsideration, and GRANTS Germaine Harmon's Motion to Enforce.

ANALYSIS

On March 28, 2024, this Court ordered supplemental relief to Germaine Harmon under 28 U.S.C. § 2202 to effectuate the earlier entered declaratory judgment. *See* Dkt. 377 ("the Supplemental Relief Order"). In that Order, this Court imposed a "constructive trust for the benefit of CGH over assets that H99DT holds and/or acquired that are traceable to CGH's or Traditions' funds." *Id.* at 2.[2] The assets included, but were not limited to, "whatever debt and equity interest H99DT holds, or ever held, or purports to hold, *in CIH*, as well as any monies, gains, profits, rights (including voting and control), assets, and other financial or beneficial advantages H99DT has or

---

[2] Although a full recitation of the facts is unnecessary, the Court will identify the actors relevant to this dispute. At the heart of this civil action is a family quarrel over money. When Germaine Harmon's late husband, Charles M. Harmon, Jr., died in January of 1997, he left substantial assets to his family, including interests in businesses, real estate, securities, and cash. Dkt. 1 ¶ 5. In addition to his wife, Charles is survived by four children—Timothy ("Tim") Harmon, Jennifer Gaffney, Paul Harmon, and Charles B. Harmon. *Id.* ¶ 6. Therese Harmon is married to Tim Harmon. *Id.* ¶ 1. In February of 1999, a Delaware limited partnership known as Traditions LP ("Traditions") was formed. *Id.* ¶ 7. The partnership sought to manage the assets that the surviving members of the family inherited from the late Charles M. Harmon, Jr. *Id.* Traditions was created by a 1999 partnership agreement, which remained in place until Traditions was converted to CGH Investments in July of 2020. Dkts. 5 ¶ 50; 34 ¶ 10. CGH is a Florida limited liability company and the successor in interest to Traditions. Dkt. 34 ¶ 3.

Traditions transferred approximately $15 million to an entity called Fame Trading Limited ("Fame"), which was beneficially owned by Traditions. Dkt. 34 ¶ 17. Fame then used these funds to finance an entity known as AGI that was being restructured in bankruptcy. *Id.* ¶ 18. The operations of AGI were then divided among related legal entities known collectively as Astrata. *Id.* ¶ 20. Those Astrata entities were organized under an entity called CIH Technology ("CIH"). *Id.*

2

may be entitled to receive, past, present, and future, from those debt and equity interests, all of which are held for the benefit of CGH." *Id.* at 2-3 (emphasis added). The Supplemental Relief Order further held that "H99DT, and any person or entity acting on behalf of or in concert with it[³] is hereby prohibited from transferring, loaning, spending, encumbering, or otherwise alienating any assets that are the subject of this constructive trust or that continue to be held by Traditions/CGH" and that "H99DT shall act at CGH's direction with respect to the assets in the constructive trust and shall take no actions inconsistent with CGH's directions and interests." *Id.* at 3 (footnote added). In accordance with this Court's Summary Judgment Opinion, Dkt. 248, the Court again held in the Supplemental Relief Order that CGH could not recover any assets transferred to H99DT before November 23, 2017. Dkt. 377 at 3, n.1.

In its Brief in Support of its Motion to Dissolve, the H99DT Trustee primarily argues two theories for dissolving the constructive trust: (1) H99DT acquired its 50% equity interest in CIH for a $100 payment in 2011 (prior to the 2017 cutoff noted in the Summary Judgment Opinion), and (2) H99DT possesses equity in CIH independent of the alleged approximate $16 million conversion of debt to equity from Traditions to CIH.[4] Dkt. 380 at 2. The Court is unconvinced by these arguments and finds that there is an ongoing need for the constructive trust.

A. H99DT Trustee's $100 Equity Argument

First, the H99DT Trustee asserts that the constructive trust is unnecessary because H99DT acquired its equity in CIH via a $100 payment (or transfer) from H99DT to CIH in 2011. Dkt. 380

---

[3] This Court has repeatedly held that Tim Harmon and Therese Harmon, the H99DT Trustee, are considered one entity for the purposes of this Court's orders. *See* Dkt. 117-7, April 23, 2021 Tr. 10:2-25 (Judge Buchanan ruling that the custody and control between Therese and Tim Harmon is a fictional division); Dkt. 211 at 14 (referring to Tim and Therese Harmon as a joint entity). Accordingly, Tim Harmon is bound by this Court's Supplemental Relief Order.

[4] Germaine Harmon alleges this amount to be exactly $15,920,881.17. Dkt. 382 at 14.

3

at 3. The H99DT Trustee asserts that the existence of this $100 transfer should lead to the dissolution of the constructive trust because it demonstrates that H99DT acquired its equity in CIH before the November 23, 2017 statute of limitations cutoff, and with funds that came directly from H99DT (funds that are not traceable to Traditions). As support for this argument, the H99DT Trustee relies on the CIH Operating Agreement, which the H99DT Trustee claims indicates that H99DT contributed $100 in 2011 in exchange for CIH equity. *Id.* (citing Dkt. 378 at 3). On review, however, this Court is unable to verify that the documents cited by the H99DT Trustee establish that H99DT actually paid $100 to CIH. *See* Dkt. 378-1 at 1-6. Stated another way, these documents do not provide evidence that any $100 transfer in exchange for equity in CIH took place.

Rather, the Court is persuaded by evidence produced by Josh Angell, a certified public accountant. Dkt. 382-1 at 3. At trial, this Court previously found that Mr. Angell was a credible witness as he explained his review of the documents pertinent to this case and the need for certain information. *See* Dkt. 357 at 6. In an affidavit submitted in support of Germaine Harmon's Motion, Mr. Angell indicated that he reviewed H99DT's general ledger and that there was no entry in H99DT's general ledger in the 2010-2011 time-period reflecting a contribution from H99DT to CIH of $100. Dkt. 382-1 at 3. In fact, previous documents belatedly produced by the H99DT Trustee in discovery have asserted alternative theories regarding how H99DT came to possess equity in CIH. As discussed further below, those documents suggest that this equity was the result of retitling funds from Traditions as equity owned by H99DT in CIH.[5] Accordingly, this Court

---

[5] For example, documents produced in discovery revealed that, in 2019, Janet Cowgill – an accountant who works for individual members of the Harmon Family, Traditions, and H99DT – explained to Tim Harmon that 100% of the money transferred between H99DT and CIH came from Traditions, and 100% of those funds were re-titled by H99DT into its own name in 2019 when Tim Harmon "treat[ed] [them] as a distribution" to H99DT. Dkt. 368 at 8 (citing different

finds insufficient evidence to establish that H99DT's equity in CIH originated from a $100 payment in 2011 and thus finds that this argument does not provide a basis to dissolve the constructive trust.

### B. The $16 Million Debt-to-Equity Conversion Argument

Next, the H99DT Trustee avers that there is no need for a constructive trust because the alleged transfer of $15,920,881.17 from Traditions to CIH is unrelated to H99DT's equity interest in CIH. The H99DT Trustee makes two arguments in support of this theory: that there never was a conversion from Traditions' debt to H99DT's equity in CIH, or that such a conversion had no legal effect. Dkt. 380 at 9-10. The H99DT Trustee now takes the position that no conversion ever occurred, maintaining during the status conference on December 12, 2024, that "[t]here was no debt to equity conversion." Dkt. 415, Dec. 12, 2024 Tr. 3:24-25. Such argument is belied by the H99DT Trustee's prior admissions in this case that "[t]he conversion took place in 2019." Dkt. 160 at 11 n.8 (citing Dkt. 160-4, the 2019 Schedule K-1 from CIH to H99DT).

Whether H99DT's equity in CIH originated from this debt-to-equity transfer is relevant for purposes of the constructive trust because the Supplemental Relief Order states that "CGH c[an] not recover any assets transferred before November 23, 2017." Dkt. 377 at 3. But as this Court has previously ruled, "post-November 23, 2017 transfers of funds from Traditions to H99DT are not barred by the applicable three-year statute of limitations," Dkt. 287 at 11, n.6, specifically including the conversion of an "asset of Traditions into an asset of H99DTs by altering CIH's tax

---

portions of the record and discovery materials referencing this conversation and summarizing the conversation). Thus, H99DT's own accountant has previously asserted that the funds in CIH are not traceable to a payment from H99DT, but that funds H99DT claims to own are premised upon Tim Harmon's retitling of Traditions' funds. This Court is displeased with the H99DT Trustee's introduction of this new and never-before-mentioned $100 transfer theory at such a late stage of these proceedings.

5

reporting documents in September and October of 2020." *Id.* at 11. Consequently, if H99DT's equity in CIH originated from the debt-to-equity transfer in 2019 or 2020, then it clearly falls under the auspices of the constructive trust.[6]

The record in this case establishes that Traditions was the "sole source of capital" used to acquire, fund, and capitalize on Fame-related assets possessed by H99DT. Dkt. 34. Accordingly, Traditions would be the "beneficial owner" of any such assets. The path of assets from Traditions to CIH is as follows: Traditions transferred approximately $15 million to Fame. *Id.* ¶ 17. Fame, using that $15 million, financed AGI. *Id.* ¶ 18. The operations of AGI were then transferred amongst related entities, and finally organized under CIH. *Id.* ¶¶ 18-19.[7] The H99DT Trustee now claims a 50% interest in CIH (formerly known as Fame) and, as stated *supra*, alleges that that equity came from a $100 transfer between H99DT and CIH. Dkt. 382 at 3.

In an email sent in February 2019, Janet Cowgill, an accountant for individual members of the Harmon family, Traditions, and H99DT, explained to Tim Harmon how CIH was funded. Dkt. 204-6 at 2. Ms. Cowgill stated that H99DT had made no partnership contribution to CIH. *Id.* The only so-called "contribution" was the $1.5 million in funds that was converted from a debt owed to Traditions to an equity position in CIH in 2019. *See id.*; Dkt. 160 at 11. This was further confirmed by Tim Harmon's own testimony when he stated H99DT "did treat [the debt] as a distribution . . . to H99DT." Dkt. 160 at 11 (citing Transcript Excerpt, Deposition of CIH dated

---

[6] In making the concession that a conversion occurred, the H99DT Trustee was disputing whether that conversion occurred in 2019 or 2020. Dkt. 160 at 11 n.8. For purposes of assessing the propriety of the constructive trust, it does not matter whether that conversion occurred in 2019 or 2020 – so long as it occurred after 2017.

[7] A review of the docket shows that in earlier filings, H99DT did not dispute that Traditions was the sole source of funding of the approximately $16 million investment in CIH. *See, e.g.*, Dkt. 168 ¶ 18.

June 3, 2021, attached as Exhibit E, at 97:17-98:21). To be sure, all of H99DT's interest and equity in CIH came from Traditions' funds, and all of it was converted out of Traditions' name by H99DT in 2019 or 2020. Thus, the H99DT Trustee's prior admissions in this case as well as documents originating from Ms. Cowgill and Tim Harmon establish that there was a conversion of Traditions' assets that places H99DT's purported interest in CIH well within the scope of the Supplemental Relief Order and establish the ongoing need for the constructive trust.

### C. Parties' Remaining Motions

In sum, the H99DT Trustee's newly introduced $100 theory of equity in CIH is unsupported by the record upon which the Trustee relies and is contradicted by the affidavit from Mr. Angell. Moreover, the record evidence produced over the course of this case, including deposition testimony from Tim Harmon, supports that H99DT's "equity" interest in CIH was a manipulation of the books by H99DT itself to convert a debt to equity without any permission or agreement. Thus, H99DT's "equity" interest in CIH falls within this Court's grant of declaratory judgment to Germaine Harmon and CGH, and it is properly included in the constructive trust created by the Court to protect CGH's assets. Dkt. 357 at 10; Dkt. 377. Accordingly, the H99DT Trustee's motions to dissolve the constructive trust, and to reconsider the Court's December 4, 2024 Order enforcing the trust, is denied, because, as stated *supra*, the Court is unpersuaded by her arguments that H99DT has any equity interest in CIH that does not trace back to a post-2017 conversion of Traditions' funds.

Because the H99DT Trustee's motions are denied, both parties continue to be bound by this Court's prior orders. As per the terms of the constructive trust, H99DT must act at CGH's direction with respect to the assets in the constructive trust and shall take no actions inconsistent with CGH's directions and control, including with respect to CIH.

For purposes of Germaine Harmon's Motion to Enforce, Germaine Harmon argues that the H99DT Trustee and Tim Harmon demanded an immediate distribution from CIH to H99DT and were interfering with the operations of CIH. Dkt. 388 at 3. The H99DT Trustee denied these allegations and responded that H99DT was acting in full compliance with the Court's Supplemental Relief Order but that it possessed no authority over Tim Harmon. Dkt. 390 at 1. As stated *supra*, the Court is unconvinced by these arguments because for the purposes of these proceedings, Tim Harmon is considered as one constituent with the H99DT Trustee. Thus, as a "person . . . acting on behalf of or in concert with [H99DT]," Tim Harmon is bound by the terms of the constructive trust. Dkt. 377 at 3. Accordingly, the Court will grant Germaine Harmon's Motion to Enforce to maintain the status quo, protect CGH's assets, and enforce the terms of this Court's prior order.

## CONCLUSION

This Court finds that there remains a purpose to the constructive trust and that the arguments made by the H99DT Trustee to dissolve the trust are unsupported. Accordingly, the constructive trust will not be dissolved. As noted *supra*, the constructive trust is clear. The trust reaches H99DT's purported equity, assets, and interest in CIH, and it must be respected.

Having now resolved the parties' most recent disputes, we have come to a logical and analytical end to this litigation. In consideration of genuine zealous advocacy and all measures of ingenuity having been considered and deliberated, we have unmistakably and distinctly resolved all disputes between these parties. The matter is fully and finally determined.

Accordingly, it is hereby

ORDERED that Plaintiff's Motion to Dissolve the Constructive Trust, Dkt. 379, is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Enforce Judgement, Dkt. 387, is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Motion to Reconsider, Dkt. 400, is DENIED

The Clerk is further directed to forward copies of this Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
January 10, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge